IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | : : : | CIVIL ACTION<br><br>No. 19-5350 |
| v. | : : | |
| BERKLEY NATIONAL INSURANCE COMPANY | : : | |

<u>**MEMORANDUM**</u>

**Juan R. Sánchez, C.J.**                                                                                        **July 9, 2020**

      After Christopher Canale slipped and fell in the bathroom of an office building, he sued both the owner and the property manager of the building in state court, seeking damages for his injuries. That underlying slip and fall action has since settled. The issue in this case is which of two insurers is required to defend and indemnify the building owner and property manager for the underlying action. Although Plaintiff Travelers Property Casualty Company of America, the insurer for the owner and manager of the building, defended the case on their behalf, Travelers contends that Defendant Berkley National Insurance Company, the insurer for the tenant of the office building, was required to defend and indemnify the building's owner and manager as additional insureds under the policy Berkley issued to the tenant. Berkley moves for judgment on the pleadings, arguing the factual allegations of Canale's underlying complaint fail to trigger its duty to defend. Because Canale's allegations could potentially support the owner and manager's recovery under Berkley's policy, the Court will deny the motion.

**BACKGROUND**

      The slip and fall accident that gave rise to the underlying action occurred at an office building located at 989 Old Eagle School Road in Wayne, Pennsylvania. PDC – Old Eagle, LLC owns the building, and Beacon Commercial Realty, LLC is the real estate manager for the building.

PDC leases the building to Evolve IP, LLC.[1] Pursuant to the lease agreement, Evolve was required to carry commercial general liability insurance and name PDC and Beacon as additional insureds.

Berkley issued a commercial general liability policy to Evolve for the policy period from August 14, 2016, until August 14, 2017. The Berkley policy includes an endorsement titled "General Liability Extension for Technology Companies Endorsement" (the additional insured endorsement), which provides the additional insured coverage at issue in this case. *See* Am. Compl. ¶ 26; Compl. Ex. G, at 67, ECF No. 1-8. The endorsement provides in relevant part that "[a]ny person or organization that is a premises owner, manager or lessor is an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you." *Id.*

Canale's accident occurred on October 6, 2016, within the policy period covered by the Berkley policy. On March 8, 2018, Canale filed a complaint against PDC and Beacon alleging theories of premises liability for his injuries. Canale's Complaint alleged the following relevant facts:

> 4. On or about October 6, 2016, Defendants Beacon Commercial Real Estate, LLC, and PDC – Old Eagle, LLC, owned, possessed, inspected, maintained, repaired, and/or controlled and/or had the right to control the interior of the premises located at 989 Old Eagle School Road, County of Delaware, Commonwealth of Pennsylvania.
>
> . . .
>
> 6. On or about October 6, 2016, Plaintiff, Christopher Canale, was working within the course and scope of his employment as the Senior Vice President and Chief Operating Officer of GPX Realty at the property located at 989 Old Eagle School Road, County of Delaware, Commonwealth of Pennsylvania, when he was caused to lose his balance, slip, stumble, and fall, thereby sustaining serious injuries and permanent injuries more fully

---

[1] Evolve originally entered the lease agreement, which was amended several times, with GPX Wayne Office Properties, L.P. In February 2016, GPX sold the property to PDC, which assumed all rights and obligations as landlord in the lease agreement with Evolve.

> set forth herein, due to an accumulation of liquid inside the men's bathroom that had existed in that state for a sufficient time such that Defendants' agents and/or employees knew or should have known of its existence and had time to remedy same.
>
> . . .
>
> 8. At all relevant times relevant hereto, Plaintiff, relied upon the fact that Defendants would maintain the property in a safe manner and Defendants' failure to maintain the property as aforesaid increased the risk of harm to the Plaintiff.

Compl., Ex. A, ECF No. 1-1 (Canale's Complaint). Travelers insured both PDC and Beacon and defended them in the underlying action.

PDC later joined Evolve as an additional defendant because the accident giving rise to Canale's claims occurred in the building Evolve leased and which, pursuant to the lease agreement, Evolve was required to inspect, maintain, repair, and clean. Travelers tendered Canale's claims against PDC and Beacon to Berkley for defense and indemnity as additional insureds under the Berkley policy, but despite numerous requests, Berkley has refused to defend PDC and Beacon under its policy.

In November 2019, Travelers initiated this case against Berkley seeking declaratory relief regarding Berkley's duty to defend and indemnify PDC and Beacon in the underlying action and recovery of all sums it paid to defend them. On January 6, 2020, Travelers, on behalf of PDC and Beacon, engaged in mediation with Canale. Berkley refused to participate in the mediation. Travelers nevertheless reached a reasonable settlement with Canale and resolved all claims asserted against PDC and Beacon in the underlying case. Following the settlement, Travelers amended its Complaint to seek recovery of all sums it paid to settle and resolve the claims against PCD and Beacon in the underlying action, in addition to defense costs. Travelers alleges PDC and

Beacon were additional insureds under the Berkley policy issued to Evolve which required Berkley to defend and indemnify them against Canale's claims.

On March 13, 2020, Berkley filed the instant motion for judgment on the pleadings. Berkley argues it is entitled to judgment because the factual allegations in Canale's Complaint fail to trigger its duty to defend (or the narrower duty to indemnify) under the additional insured endorsement of its policy. Travelers opposes the motion.

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. "Judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The Court must accept all of the allegations in the nonmovant's pleadings as true and draw all reasonable inferences in that party's favor. *See Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017). Because interpretation of an insurance policy is a question of law, *see Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005), when the sole issue is the interpretation of a policy, the Court may address it on a motion for judgment on the pleadings, *see Nautilus Ins. Co. v. 200 Christian St. Partners, LLC*, 363 F. Supp. 3d 559, 563 (E.D. Pa. 2019).

In Pennsylvania, an insurer's obligations are determined by the "four-corners rule." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249 (3d Cir. 2019). Pursuant to this rule, an insurer's duty to defend is "triggered, if at all, by the factual averments contained in the underlying complaint." *Id.* (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)). An insurer must defend an insured if the factual

4

allegations of the underlying complaint could "actually or potentially" support a claim within the scope of the policy.² *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010).

"[W]hether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the [underlying] complaint." *Id.* (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)). In evaluating, the underlying complaint, a court must take the factual allegations as true and liberally construe them in favor of the insured. *See id.* If the factual allegations of the underlying complaint "potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *Sapa Extrusions, Inc.*, 939 F.3d at 249 (internal quotation marks and citations omitted).

Here, the factual allegations of Canale's underlying complaint could actually or potentially support recovery under the additional insured endorsement in the Berkley policy.³ The Court will thus deny Berkley's motion for judgment on the pleadings.

First, the Court must examine the relevant terms of the Berkley policy. *See id.* at 252. According to the additional insured endorsement, "[a]ny person or organization that is a premises owner, manager or lessor is an insured, but only with respect to liability arising out of the

---

² In addition to the duty to defend, Travelers alleges Berkley had a duty to indemnify PDC and Beacon for all sums paid to settle and resolve the claims with Canale. Because an insurer's duty to defend is broader than its duty to indemnify, *see Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016), the parties only argue, and the Court only addresses, whether Berkley has established that it had no duty to defend, *see id.* ("[I]t necessarily follows that [the insurer] will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide a defense.").

³ The Berkley policy contains other limitations on Berkley's duty to defend including, but not limited to, Berkley will only defend against a suit seeking damages "because of 'bodily injury' or 'property damage' to which th[e] insurance applies." Compl., Ex. G at 32, ECF No. 1-8. However, in this motion, Berkley only challenges whether the additional insured endorsement was triggered.

ownership, maintenance or use of that part of any premises leased to you [i.e., Evolve]." Compl. Ex. G, at 67, ECF No. 1-8. The operative policy terms are "premises owner, manager, or lessor," "arising out of the ownership, maintenance, or use," and "part of any premises leased to [Evolve]."

Second, the Court must interpret the operative policy terms. *See Sapa Extrusions, Inc.*, 939 F.3d at 252. Interpretation of an insurance policy is a question of law. *See Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir. 2002). If the words are clear and unambiguous, the court must give them their plain and ordinary meaning. *See Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760–61 (3d Cir.1985).

Evolve concedes PDC and Beacon were the lessor and manager of the property where Canale's fall occurred, and that their liability in the underlying action arises out of their ownership, maintenance, or use of a bathroom at the property. *See* Def.'s Mot. for J. on Pleadings 8. Based on this concession, the Court need not interpret "owner, manager, or lessor" and "arising out of ownership, maintenance, or use." Resolution of Berkley's motion thus turns on the interpretation of the term "premises" and the phrase "that part of any premises leased to" Evolve, and whether Canale's Complaint sufficiently alleges the bathroom falls within that interpretation.[4] The Court concludes it does.

Although the Berkley policy does not define "premises," "premises leased to Evolve," "premises owner, manager, or lessor," the phrase "that part of any premises leased to you [i.e.

---

[4] Despite conceding that PDC and Beacon's liability in the underlying action arises out of their ownership, maintenance, or use of the bathroom where the accident occurred, Berkley argues that liability did not "arise out of" "the portion of the premises Evolve leased." Def.'s Mot. for J. on the Pleadings 9–11. The argument appears to be that Canale's Complaint does not allege the bathroom was a part of the premises leased to Evolve or that the bathroom was not actually a part of the premises leased to Evolve. Nevertheless, because Berkley concedes PDC and Beacon's liability arises out of the ownership, maintenance, or use of the bathroom, the question is whether the facts alleged in Canale's Complaint, construed in PDC and Beacon's favor, sufficiently state the bathroom was a part of the premises leased to Evolve.

Evolve]" is clear and unambiguous. It refers to the property Evolve, as the primary insured under the Berkley policy, leases for its business. *See Kvaerner*, 908 A.2d at 897 ("Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense." (citations omitted)). The plain meaning of the words is thus whatever property Evolve leased as defined by a lease agreement.

Pursuant to the lease agreement, Evolve leased certain office space in the "Building" at 989 Old Eagle School Road, together with the surrounding land on which the building is located. *See* Compl. Ex. B. Through several amendments to the lease agreement, Evolve leased additional office space within the building. *See id.* Exs. C–E. In the final amendment, Evolve leased the premises which "encompass[ed] all of the rentable square feet in the Building and [Evolve] [was] entitled to use the entire Premises." *Id.* Ex. E, at 1–2. Therefore, the Court interprets "that part of any premises leased to [Evolve]" referred to in the policy as referencing the entire building located at 989 Old Eagle School Road in Wayne, Pennsylvania.[5]

Third, and finally, the Court must compare the terms of the policy with the allegations in the complaint to determine whether the allegations "trigger the polic[y's] provisions of coverage." *Sapa Extrusions, Inc.*, 939 F.3d at 252 (internal citations omitted). "In making this determination, the 'factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.'" *Am. & Foreign Ins. Co.*, 2 A.3d at 541 (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)). Canale's Complaint

---

[5] Berkley does not argue that the terms of the policy are ambiguous or that they would have another meaning. Even if the terms were ambiguous, the Court would look to the intention of the parties. If those intentions "cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract." *Id.* The Court would thus still look to the terms of the lease agreement, which required Evolve to insure PDC and Beacon, to determine the meaning of "that part of the premises leased to you" within the policy.

alleges PDC and Beacon owned and maintained the "interior of the premises" located at "989 Old Eagle School Road, County of Delaware, Commonwealth of Pennsylvania." *See* Compl. Ex. A, ¶ 4. Canale's Complaint also alleges that on the date of the incident Canale was "at the property located at 989 Old Eagle School Road, County of Delaware, Commonwealth of Pennsylvania." *Id.* ¶ 6. Canale allegedly fell "inside the men's restroom" at the same location. *Id.*

The allegations that the incident occurred "inside the men's bathroom," at the "premises located at 989 Old Eagle School Road," Compl. Ex. A, provide a sufficient basis from which to infer that the site of the incident could potentially be "part of any premises leased to [Evolve]," which, according to the lease agreement, included the building at 989 Old Eagle School Road and "encompass[ed] all of the rentable square feet in the [b]uilding." *Id.* Ex. E. Because Canale's Complaint alleges facts suggesting that the bathroom was potentially a part of the premises leased to Evolve, the factual allegations could potentially support PDC and Beacon's recovery under the additional insured endorsement of the Berkley policy. *See Fairfield Henry, LLC v. Phila. Indem. Ins. Co.*, No. 12-5079, 2014 WL 991593, at *15 (E.D. Pa. Mar. 13, 2014) (concluding allegations regarding common areas of a residential complex "at least potentially come[] within that part of the premises leased to" an insured tenant because use of the common areas was contemplated and incidental to the lease). The Court will therefore deny Berkley's motion for judgment on the pleadings.

Berkley argues Canale's Complaint does not potentially trigger coverage because it does not allege the "bathroom was inside of that part of the premises leased to Evolve." Def.'s Mot. for J. on Pleadings 8. The argument appears to be premised on a requirement that Canale's Complaint specifically state the incident occurred in the bathroom, which "is a part of the premises leased to Evolve." In support of this argument, Berkley states Evolve's relationship to Canale is merely

incidental because the mere allegation that the injury occurred in a bathroom that shares the same address as the insured location, is insufficient to trigger its duty to defend. The Court disagrees.

The plain and ordinary meaning of "part of any premises leased to" Evolve is the premises identified by Evolve's lease agreement. The lease agreement states Evolve leased the entire building located at 989 Old Eagle School Road and the surrounding land on which it was located. If Canale's Complaint seeks to impose liability on PDC and Beacon arising out of their ownership and management of any part of that property, the additional insured endorsement would be triggered. As discussed, Canale's Complaint alleges the incident occurred inside the bathroom at the property located at 989 Old Eagle School Road, which PDC and Beacon allegedly failed to maintain. Because the entire building and surrounding land located at that address was leased to Evolve, Canale's Complaint stating he was at the address and inside the men's bathroom sufficiently alleges it was "part of any premises leased to" Evolve. And even if the bathroom is ultimately not part of the premises leased to Evolve, "it is the potential, rather than the certainty" that the bathroom was a part of the premises leased to evolve that triggered the duty to defend. *Am. & Foreign Ins. Co.*, 2 A.3d at 541–44 (stating insurers have duty to defend *potentially* covered claims).

To the extent Berkley argues Canale's Complaint must explicitly state the bathroom was a "part of the premises leased to" Evolve, Berkley points to no authority requiring factual allegations to mirror the language of the policy. It is the nature of the allegations that determines whether an insurer's duty to defend has been triggered, not the labels provided in the underlying complaint. *See Sapa Extrusions, Inc.*, 939 F.3d at 252 ("Pennsylvania law is clear that facts matter more than labels."). In this case, Canale's Complaint alleging that his injuries occurred inside the men's

bathroom at 989 Old Eagle School Road are sufficient to potentially support recovery under the additional insured endorsement in the Berkley policy. Berkley's argument on this point thus fails.

**CONCLUSION**

Canale's Complaint, when construed in PDC and Beacon's favor, seeks to impose liability on PDC and Beacon arising out of their ownership and management of the men's bathroom in the building located at 989 Old Eagle School Road in Wayne, Pennsylvania. Because the entire premises and building at that location was leased to Evolve, the allegations potentially support PDC and Beacon's recovery under the additional insured endorsement of the Berkley policy. Accordingly, the Court will deny Berkley's motion for judgment on the pleadings.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.